MEMPHIS & L. R. R. R. CO. AS RE-ORGANIZED V. THE STATE.

1. MORTGAGE: *To State, when good without registering.*
   When a loan is made by the State and a mortgage taken to secure it in pursuance to the provisions of a public Statute, all persons are chargeable with notice of it, and the State will not be prejudiced by the neglect of her agents to have the mortgage recorded.

2. SAME: *Foreclosing. Subsequent mortgagees should be parties.*
   A second mortgagee, who is not a party to a suit to foreclose a first mortgage, is not bound by the decree rendered in the suit, but may foreclose and sell the equity of redemption, and the purchaser in that sale will be entitled to possession and to redeem from the first mortgage.

APPEAL from *Pulaski* Chancery Court.
Hon. D. W. CARROLL, Chancellor.

*B. C. Brown* and *U. M. & G. P. Rose*, for appellants.
*C. B. Moore, Attorney-General*, and *F. W. Compton*, contra.

Hon. W. W. SMITH, Special Judge. The Memphis & Little Rock Railroad Company by its deed, dated May 1, 1860, conveyed its road, rolling stock, charter, franchises and all its property to R. C. Brinkley, Sam. Tate and Geo. C. Watkins, in trust to secure payment of principal and accruing semi-annual interest on its thirteen hundred bonds of that date, each for one thousand dollars, maturing May 1, 1890, and bearing interest at eight per cent., payable semi-annually, for which interest coupons were attached to the bonds. The deed provided for sale upon certain defaults, but there was in it no provision that upon any default in payment of interest the principal should become due. This deed was duly recorded in all the counties through which the road ran and in which any of the property conveyed was situate, within a short time after its execution and before the first day of September, 1860.

By an Act, approved January 3, 1861, entitled "An Act to encourage internal improvements," the Legislature of the State of Arkansas appropriated one hundred thousand dollars of the five per cent. fund and lent it to the same railroad company for ten years at the rate of eight per cent. per annum interest, to be paid annually. On January 10, 1861, the railroad company executed and delivered to the State its promissory note for that sum, and on the same day the company executed and delivered to the State a mortgage by which it conveyed to the State its road and rolling stock

to secure payment of the sum so lent and the accruing interest. This deed was never recorded. On March 11, 1867, the General Assembly, by an Act approved on that day, remitted all interest that had then accrued upon said loan.

On March 1, 1871, the railroad company executed and issued its certain other bonds, one thousand in number, each for one thousand dollars, payable January 1, 1901, bearing seven per cent. interest, payable semi-annually, for which coupons were attached, and to secure payment of the principal and accruing interest, by its deed of that date, conveyed its charter, road, franchises and all its other property to Henry F. Vail in trust to convey, upon the default therein mentioned. This deed was duly recorded in all the counties in which any part of the conveyed property was situate within less than a month after its execution.

This conveyance was made expressly subject to the first deed above recited by which the property was conveyed to Brinkley, Tate and Watkins.

It was also provided that if default in payment of interest or of any of the coupons was made for sixty days, that the trustee might sell sufficient to pay the amount due ; but that " if a majority in number and value of the holders of the coupons which may remain due and unpaid shall elect to do so they may postpone the sale of the property hereby conveyed for the payment of the said coupons so due and unpaid for the period of twelve months, and at the expiration of the said period the said Henry F. Vail, shall, upon request in writing of a majority in number and value of the holders of the bonds and coupons hereby secured, offer for sale and sell all the property hereby conveyed to him."

The default in payment occurred ; the holders of the unpaid coupons postponed the sale for the time provided. and at its expiration a majority in number and value of the holders of the bonds and coupons secured by this deed, requested a sale

of the whole conveyed property. The trustee thereupon gave notice according to the provisions of the deed that he would sell the whole property conveyed to the highest bidder at Hopefield, Arkansas, on March 17, 1873, subject to the lien of the deed to Brinkley, Watkins and Tate and of the bonds thereby secured and "furthermore, subject to all liens of the State of Arkansas, upon said property or any part thereof, previously to the lien arising under said second mortgage deed of said company."

On the day named, the trustee sold the property to Stillman Witt, who purchased for himself and his associates, and the trustee, by his deed dated March 17, 1873, conveyed the whole property to Witt.

On March 29, 1873, Witt, by his deed or declaration, declared that he had purchased for himself, J. H. Wade, John J. Astor, Robert Lennox Kennedy, A. A. Lo, George T. Adee, William B. Greenlaw, Hu. L. Brinkley and Sam. Tate, holders of the second mortgage bonds of the company secured by the deed to Vail and conveyed to himself and the others named to hold in the proportions of their owner- ship of such bonds, the proportion being stated in the deed. These parties afterwards organized the Memphis & Little Rock Rail*way* Company and conveyed the property to that company.

That company afterwards made a proposition to the holders of the first mortgage bonds of the company, which was, by part of them conditionally accepted. The proposition and acceptance were in these words :

[PROPOSTION.]

The Memphis & Little Rock Railway Company propose to the first mortgage bondholders of the Memphis and Little Rock Railroad Company to :

Issue  first mortgage 8-100 currency, thirty-year bond..................................$ 2,600,000

Issue second mortgage 6-100 currency, twenty-five-year bond........................ 1,000,000

Issue income 7-100 currency, twenty-year bond 1,000,000

Issue  stock............................. 5,000,000

It is proposed :

1.  "To place in the hands of the trustees for distribution as hereinafter provided for, the following securities :  .

$2,400,000, first mortgage bonds ;

300,000, second mortgage bonds ;

500,000, income bonds ;

300,000, stock.

2.  "To authorize said trustees to issue to  the old first mortgage (i. e. bondholders), new first mortgage 8-100 bonds for the principal, coupons and funded interest bonds and coupons thereon, with interest on said coupons, and to hold  said old securities for the specific benefit of the new bonds issued therefor until all legal questions are removed or settled satisfactory to said trustees ; but said bonds are to be so printed across or defaced as not to be a marketable bond, if said trustees deem it expedient.

3.  "To authorize said trustees to use, either in settlement of rolling stock debt which is a lien on the property, or to return to the company pro rata, as they pay any part of said debt, $2.000,000 of said first mortgage eight per cent. bonds.

4.  "To authorize said trustees to issue to the holders of Arkansas State bonds, issued to the Memphis and Little Rock Railroad Company, for each bond of $1,000, $250 of first mortgage eight per cent. bonds; $250 second mortgage six per cent. bonds; $250 income bonds, and $250 for stock their face; and for the mature and maturing coupons, up to and including April 1, 1875, income bonds for their

face; provided, said specified issues of Arkansas State bonds shall be presented on or before the first day of March, 1874, or at any other date the trustees may deem expedient. If said bonds should not be presented by that time, said trustees are authorized to issue up to the limit of $1,200,000 Arkansas bonds for any other bonds of the State issued to said railroad, such amounts of any of said new securities in payment therefor, as they may deem fit, not exceeding the pro rata; all such Arkansas bonds to be held in trust by said trustees for the purpose of paying the debt due by the Memphis and Little Rock Railroad Company to the State of Arkansas.

5. "To authorize said trustees to use the coupons on said Arkansas bonds to pay the interest on the bonds due to the State of Arkansas, that were issued to the Memphis and Little Rock Railroad Company, as it may become due.

6. "To authorize the said trustees, in case the State of Arkansas shall donate to the railway any State bonds, or other things, on condition of said company retiring the original $1,200,000 State bonds, to give to the parties who may have surrendered State bonds issued to the Memphis and Little Rock Railroad Company, a pro rata proportion of such new donated bonds, upon their returning to the trustees, for the use of the Railway Company, the income bonds and stock received by them on account of the principal of such surrendered bonds in equal proportions and amount.

7. "The company agree with the trustees that they will reserve $3,000,000 of stock, subject to their order, to be used in exchange for stock of the Memphis and Little Rock Railroad Company; said stock to be transferred to the Memphis and Little Rock Railway Company, or exchanged, and not to be exchanged at above par for the face of said stock in new stock at its par or face value.

8. "The first mortgage bondholders to fund their inter-

·est on their bonds, and funded interest bonds, up to July 1, 1874, in first mortgage, eight per cent. bonds at par; the new first mortgage bonds to bear interest from first of July, 1874, and first coupons to be paid first of January, 1875. The second mortgage bonds to bear interest from the first of April, 1875, and the first coupons to be paid first of October, 1875 ; and both classes of bonds to have ·semi-annual coupons attached, for the interest thereon, payable semi-annually, beginning with the dates aforesaid.

9. " The expenses of executing this proposition to be borne by the Railway Company."

[ACCEPTANCE.]

" New York, October 18, 1873,

" We, whose names are hereto subscribed, holders of first mortgage bonds of the Memphis and Little Rock Railroad Company, and funded interest bonds of said company, for the amount of said bonds set opposite our names, do hereby accept the above and foregoing proposition of the Memphis and Little Rock Railway Company, and assent to the securities proposed, and agree to surrender our bonds and coupons to the trustees, in accordance with said proposition, hereby modifying, to that extent, all former agreements made on the subject, with the purchasers of said road under the second mortgage, only to the extent named in the foregoing proposition ; *provided, that nothing contained in our assent to this proposition, shall be construed to deprive us of our rights and security, or as an acknowledgment of satisfaction for the old securities, in such case to be surrendered to the trustees, until all questions, legal or equitable, shall be fully settled as to the legality of the new issue of bonds, and the mortgage securing the same, as being a first lien.* This agreement is to be executed, so far

:as the issuance and delivery to the trustees of the securities received, by the first day of January, next.

" *We hereby name and appoint as trustees in the fore-going proposition, James Tinker, of the City of New York; Wm. S. Pierson, of Windsor, Connecticut; R. K. Dow, of Claremont, New Hampshire; with full power to receive the securities named therein, and to act as trustees in this agreement, with the usual powers of trustees in such cases.* The said company shall not be entitled to issue and retain the said $200,000 first mortgage bonds until the said $2,400,-000 first mortgage bonds shall be delivered to the trustees, and, also, $275,000 of Arkansas State bonds, indorsed by the Memphis and Little Rock Railroad Company have been surrendered to the trustees for exchange on the terms specified.

[SIGNED IN DUPLICATE.]

S. M Swinson, $81,000, first mortgage bonds;
S. M. Swinson, $45,500, interest bonds;
C. W. Lampson & Co., $180,000, first mortgage bonds;
C. W. Lampson & Co., $28,560, interest bonds;
James Tinker, $2,000, interest bonds;
F. H. Cossitt, $100,000, first mortgage bonds;
F. H. Cossitt, $17,000, interest bonds;
J. N. Phelps, $20,000, first mortgage bonds;
C. Dow, for R. K. Dow, $15,000, first mortgage bonds;
R. K. Dow, $10,000, first mortgage bonds;
Edward Matthews, $322,000, first mortgage bonds;
Edward Matthews, $84,180, interest funded bonds."

In compliance with this proposition. the railway company, by its deed, dated December 1, 1873, conveyed all the said road, franchises and property to the New York Guaranty and Indemnity Company, to secure payment of two million,

six hundred thousand dollars of its "first" mortgage bonds, due January, 1904, bearing seven per cent. interest, payable semi-annually, for which coupons were attached. This deed provided that if default was made in payment of the coupons, or any of them, and continued for six months, that the principal should become due, and that sale might be made of the property. It also provided that the Indemnity Company might resign, and, in that case, William S. Pierson, Watson Matthews and R. K. Dow should become trustees of the deed, with all powers and rights.

Upon this deed being executed, those of the holders of the first mortgage bonds of the railroad company, secured by the deed to Brinkley, Tate and Watkins, who had accepted the proposition, surrendered their bonds—not to the railway company, nor to the railroad company (neither of which, as is shown, ever received or had possession of them); but to the trustees named in the acceptance of the proposition—James S. Tinker, William S. Pierson, and R. K. Dow, the survivors of whom still hold them.

Default having been made, and continued for six months, the Indemnity Company resigned, and, thereupon, the substituted trustees, on the twenty-ninth day of June, 1875, exhibited their bill in the Circuit Court of the United States for the Eastern District of Arkansas, praying foreclosure of the mortgage executed by the railway company.

Afterwards, on November 21, 1876, Brinkley and Tate, surviving trustees of the deed of the railroad company, of May 1, 1860, intervened in that cause and were, on their request made parties complainants, and, by their bill, prayed foreclosure of the deed of May 1, 1860.

The court decreed foreclosure of both mortgages, both being kept distinct in the decree, the amount due on each being separately ascertained, and ordered sale of the property, first, under the deed of May 1, 1860, and, second,

under the mortgage of the railway company. Separate sales were had, at each the property was purchased by William S. Pierson, Watson Matthews and R. K. Dow, separate sums being bid. The sales were reported to the court and confirmed, and, by order of court, the commissioners conveyed the whole property to the purchasers, in trust, that they should convey it to a new company to be formed by the holders of the bonds.

The bondholders, under the provisions of the charter of the Memphis and Little Rock Railroad Company, organized a new company, called the "Memphis and Little Rock Railroad Company as Re-organized," and, on the thirtieth day of April, 1877, the purchasers conveyed the whole property of every kind and description, including the charter, and all franchises and privileges, the road, rolling srock, and all appurtenances, to this company ; which entered on and took, and has since had and kept, possession thereof, and is now operating the road.

On March 27th, 1875, the State of Arkansas filed her bill in the Chancery Court of Pulaski county, making the Memphis and Little Rock Railroad Company, Sam Tate and R. C. Brinkley, surviving trustees of the deed of May 1st, 1860, some persons whom she alleged were holders of bonds secured by that deed, and others whom she alleged were holders of the second mortgage bonds of the old railroad company, parties, praying a foreclosure of her mortgage, and that it be declared a prior lien.

After the purchase of the property by the present defendant, the Memphis and Little Rock Railroad Company as Re-organized, that company intervened in this cause, was made a defendant, and filed its answer, setting up all the above facts—the purchase of the property by that company, its possession, etc., and contended that the mortgage of the old railroad company, dated May 1st, 1860,

41—37

was a prior lien upon the property to the mortgage held by the State; that so far as the State was concerned, nothing that had·been done between the railroad company and the holders of bonds secured by that deed, affected the lien of the deed of May 1st, 1860, and that consequently the State was a second incumbrancer, and held nothing but a mortgage of the equity of redemption; that she was only entitled to redeem, etc., etc.

The cause was heard, and the chancellor held that the effect of the transaction and agreement of October 18th, 1873, between the railway company and the holders of the bonds secured by the deed of 1860, as to all bondholders who had surrendered their bonds under that agreement, was a novation, and extinguished the surrendered bonds; that as against all bonds so surrendered, the State had the prior lien; found the debt to be $202,133 32-100, and ordered sale subject to the lien of the bonds of 1860 not surrendered.

From this decree the defendant, the Memphis and Little Rock Railroad Company as Re-organized, appealed to this court.

1. MORT-GAGE TO THE STATE When good without registering.

It is conceded by the company's counsel that, notwithstanding the mortgage, to foreclose which this suit was brought, was never filed for record, it is yet a lien upon the equity of redemption, which remained in the original company after the execution of the first, or Brinkley mortgage. This is upon the principle that the loan and stipulated security were in pursuance of a public Statute, of which all persons were required, at their peril, to take notice, and the State must not be prejudiced by the neglect of her agents.

The State's counsel concede that the chancellor erred in holding that only $100,000 of the first mortgage bonds are now outstanding, and the only prior lien to that of

the State. This relieves us of the necessity of inquiry whether the transaction of October 18th, 1873, was a novation, by which the holders of that series of bonds lost the priority which they once undoubtedly held over the State, a junior incumbrancer.

Not having been a party to the foreclosure suit in the Federal Court, the interests of the State are in nowise affected by the decree rendered in that proceeding. On the contrary, she may foreclose and sell the equity of redemption, and the purchaser at that sale will be entitled to be let into possession, and to redeem the first mortgage.

2. Mortgage: Foreclosing: Subsequent mortgees should be parties.

The decree below will be reversed, as upon a concession of error, and a decree will be entered here for a sale of the property, subject to the lien of the deed of May 1st, 1860. The clerk of this court will be charged with the execution of this decree, and if any surplus is produced by that sale, after defraying the costs of the suit below, expenses of sale, and the debt due the State, it will belong to the Memphis and Little Rock Railroad Company as re-organized, the purchaser under the decree of foreclosure in the Federal Court. The costs of this appeal must be adjudged against the State.

Hon. J. R. EAKIN did not sit in this case.

37 643
55 556
37 643
74 386
74 389
75 316
77 347
77 530

37 643
81 300
82 301

37 643
87 210

37 643
89 297
89 299
90 423