FROELICH, Appellant, v. SWAFFORD et al., Respondents.

(144 N. W. 925.)

1.    **Mortgages—Foreclosure—Right to Redeem—Validity of Assignment of Prior Mortgage.**

A junior mortgagee's right to redeem from a senior mortgage, which was foreclosed by an action to which he was not a party, was not affected by the foreclosure, whether the plaintiff in the foreclosure suit was the legal holder of the prior mortgage or not, and hence the validity of the assignment of such prior mortgage was immaterial, so far as his right to redeem was concerned.

2.  **Mortgages—Suit to Redeem—Unacknowledged Assignment of Senior Mortgage—Evidence—Senior Recording of Later Assignment.**

    In a junior mortgagee's suit to redeem from a senior mortgage, which was foreclosed without making him a party, in which he attacked the assignment of the senior mortgage to the plaintiff in the foreclosure suit, such assignment, though unacknowledged, was admissible in evidence for what it was worth, notwithstanding the prior recording of a later assignment, the objection to its introduction being solely that the assignment was inoperative because of such later assignment.

3.  **Mortgages—Assignment of Senior Mortgage—Redemption—Burden of Proof—Assignment in Good Faith.**

    In a junior mortgagee's suit to redeem from a senior mortgage, foreclosed without making him a party, he had the burden of proving, in attacking the assignment of the senior mortgage to the plaintiff in foreclosure, that such subsequent assignee took his assignment in good faith, without notice of the senior assignment, and hence the written evidence of such senior assignment sustained a finding that such plaintiff was the owner of the prior mortgage.

4.  **Mortgages—Redemption—Subsequent Assignee of Senior Mortgage.**

    In a junior mortgagee's suit to redeem from a senior mortgage, foreclosed without making him a party, where the holder of an assignment of the senior mortgage subsequent to the assignment to the plaintiff in foreclosure, but which was first recorded, made default in the suit to redeem, his right to the redemption fund was barred, as against a party claiming under the foreclosure sale.

5.  **Mortgages—Persons Entitled to Redeem—Heirs of Mortgagor.**

    Where the year during which a mortgagor might have redeemed from a foreclosure sale expired before his death, his minor heirs acquired no right to redeem.

6.  **Mortgages—Redemption Fund—Senior Mortgagee—Suit to Redeem.**

    Where a prior mortgage was foreclosed without making a junior mortgagee a party, and the land was purchased by senior mortgagee, and conveyed by successive warranty deeds to S., the senior mortgagee and her grantees senior to S., who had parted with all interest in the land, had no claim to the redemption fund, upon redemption by junior mortgagee.

7.  **Mortgages—Amount Required to Redeem—Junior Mortgagee.**

    A junior mortgagee, who is party to a suit to foreclose a prior mortgage, may redeem by payment of the amount for which the property was sold on the foreclosure, even though less than the amount of the senior mortgage; but a junior

mortgagee or lienholder who is not party to the action cannot redeem from the foreclosure sale, but only from the senior mortgage itself, and by paying the whole amount thereof. So held, in construing Civ. Code, Sec. 646, providing for redemption of realty from foreclosure sale within one year from sale, in manner and to effect as provided for redemption of realty from execution sale; Sec. 375, providing that realty sold under execution may be redeemed by a creditor having a lien thereon subsequent to that on which the property was sold; and Sec. 376, providing that he may so redeem witin one year after sale, on paying the purchaser the amount of his purchase, with interest, etc., and, if the purchaser be also a creditor having a prior lien to that of the redemptioner, other than the judgment under which such purchase was made, the amount of such lien, with interest.

8. **Limitation of Actions—Suit to Redeem from Senior Mortgage—Time to Redeem—"Foreclosed."**

Civ. Code, Sec. 66, providing that an action for relief not otherwise therein provided for must be commenced within ten years after cause of action accrues, applies to an action by a junior mortgagee to redeem from a senior mortgage, foreclosed without making him a party, since Civ. Code, Sec. 2034, giving to any person having an interest in property subject to a lien a right to redeem it from the lien at any time after the claim is due, and before his right of redemption is foreclosed, applies only to parties to the action to foreclose who fail to redeem within the year allowed by statute, and whose right to redeem is then "foreclosed" within the meaning of Sec. 2034, and the 20-year statute limiting right to foreclose a realty mortgage does not apply to such suit to redeem.

9. **Limitation of Actions—Redemption by Junior Mortgagee—Suit to Redeem—Accrual of Redemption Right.**

The right of a junior mortgagee to redeem from a senior mortgage, foreclosed without making him a party, and his right to sue for redemption, accrued at date of maturity of the senior mortgage, and limitations ran from that date.

10. **Actions—Suit to Redeem From Senior Mortgage—Necessary Parties.**

Only those possessing a present right or claim to the redemption fund are necessary parties to an action to redeem from a mortgage.

11. **Action—Suit to Redeem From Senior Mortgage—Parties—Prior Mortgagee's Assignee.**

In a junior mortgagee's suit to redeem from a senior mortgage, the senior mortgagee's assignee was a necessary party.

12.  **Limitation of Actions—Suit to Redeem—Non-residence of Senior Mortgagee's Assignee—Tolling of Statute—Actions Quasi in Rem—Personam.**

Under Code Civ. Proc., Sec. 69, providing that if, when a cause of action accrues against a person he is outside of the state, the action may be commenced within the time limited after his return to the state, held, that, where a senior mortgage was foreclosed without making a senior mortgagee a party, the non-residence of the purchaser and of her grantees successively owning the land until within ten years before bringing of suit to redeem by junior mortgagee, tolled the statute, and the action was not barred by limitations, since the statute refers only to the accruing of the cause of action, regardless of forms of remedy, and hence applies to actions quasi in rem as well as to actions in personam, though inapplicable to actions in rem, to which there are no parties.

13.  **Limitation of Actions—Suit to Redeem From Senior Mortgage—Ten-year Payment of Taxes by Prior Mortgagee.**

In a suit by junior mortgagee to redeem from a senior mortgage, foreclosed without making him a party, held, the action was not barred by 10-years' possession of and payment of taxes on the land by the purchaser and her grantees, since, as owners of the legal title, they were entitled to possession, and were required to pay the taxes, precisely as was the mortgagor.

14.  **Mortgages—Foreclosure—Limitations—Delay.**

A mortgagee does not lose any right under his mortgage by mere delay in enforcing it, so long as his lien is not barred by limitations.

15.  **Mortgages—Suit to Redeem—Junior Mortgagee's Laches.**

In a junior mortgagee's suit to redeem from a senior mortgage, foreclosed without making him a party, evidence held not to show laches on his part barring his right to redeem, or to foreclose.

16.  **Mortgages—Suit to Redeem—Compensation for Improvements—Knowledge of Junior Mortgagee's Rights.**

Where a senior mortgage was foreclosed without making a junior mortgagee a party, one who claimed ownership of the land under a chain of title derived from purchaser under the foreclosure, and who purchased with full knowledge of junior mortgagee's rights, and with knowledge that he had refused to waive, and was affirmatively asserting such rights, made improvements on the land at his peril.

17.  **Mortgages—Right to Redeem from Senior Mortgage—Value of Property—Immateriality.**

A junior mortgagee's right to redeem from a senior mort-

10—Vol. 33, S. D.

gage, foreclosed without making him a party, was not affected by the great increase in the value of the mortgaged premises.

18. **Mortgages—Suit to Redeem and to Foreclose—Effect of Suit— Sale to Satisfy Both Mortgages.**

Where a junior mortgagee, in one suit, seeks foreclosure of his mortgage and also a redemption from a senior mortgage, he in effect asks, and is entitled to a decree to the effect that he may sell, at foreclosure sale, the mortgaged land in satis-. faction of the entire amount of both liens.

19. **Mortgages—Foreclosure of Junior Mortgage—Redemption— Claim Under.**

Where a mortgage was foreclosed without making a junior mortgagee a party, a subsequent foreclosure of the junior mortgage, with redemption from the senior mortgage, did not defeat the right of one claiming under the earlier foreclosure, to redeem from the sale under the junior mortgage.

20. **Mortgages—Foreclosure by Junior Mortgagee—Redemption— Rents and Profits.**

In a junior mortgagee's suit to foreclose, and to redeem from a senior mortgage, which was foreclosed without making him a party, one claiming under the earlier foreclosure could not be required to account for rents and profits, since he succeeded to the rights and title of the mortgagors.

(Opinion filed January 12, 1914. Rehearing pending.)

Appeal from Circuit Court, Kingsbury County. Hon. ALVA E. TAYLOR, Judge.

Action by G. W. Froelich against C. G. Swafford and others, for foreclosure of a junior mortgage and to redeem from a senior mortgage. From a decree for defendants, and from an order denying a new trial, plaintiff appeals.

Reversed, and new trial granted.

*U. S. G. Cherry,* and *Herbert Abbott,* for Appellant.

The Showalter mortgage foreclosure proceeding was an absolute nullity, *so far as the plaintiff is concerned,* because neither the plaintiff nor his assignor and co-owner of the debt and junior mortgage, upon which this suit is based, were made parties to it, nor were they privies to parties thereto. A junior incumbrancer is not in any way bound or affected by a foreclosure of a senior incumbrance to which he is not made a party. C. C. 2034, 2035, 2036. American Banking & Trust Co. v. Lynch, 10 S. D. 410, 12 id. 204; Anson v. Anson, 20 Ia. 55, 89 Am. Dec. 514; Bunce v. West, 17 N. W. 179; 17 Enc. P. & P. 950. 964; Miner v. Beek-

man, 50 N. Y. 337; Cram v. Cotrell, 48 Neb. 646, 58 Am. St. 714; Gaskell v. Viquesney, 122 Ind. 244, 17 Am. St. 364; 11 Am. & Eng. Ency. L. (2nd Ed.) 245; Civil Code, sec. 2034. "Redemption," in 17 Enc. P. & P., page 950. A junior incumbrancer may seek in the same bill a foreclosure of his mortgage and a redemption from a prior one, and a bill for redemption and for an accounting from the mortgagee or other defendant is common, and such a union is not multifarious. 17 Ency. P. and P. p. 964:

The purported assignment to Parks, endorsed on the mortgage itself, and attempted to be recorded by the re-recording of the mortgage, *was not a recordable instrument.* It was not acknowledged. The plaintiff not only had a right, but he was bound to disregard it. His rights are in no manner affected by it. Blaisdell was not made a party to the pretended foreclosure proceedings based upon the Showalter mortgage, hence the recording in the Register of Deeds office of a non-recordable purported assignment, *not from Blaisdell,* but from the original mortgagee, the Showalter Mortgage Co., made and recorded subsequent to the making and recording of the assignment by the mortgagee to Blaisdell, establishes nothing, and gives notice of nothing. Assuming, for the purposes of argument only, that Parks became an equitable assignee of the Showalter mortgage, and that Swafford succeeded to her interest and is now the equitable assignee thereof, the plaintiff's right of redemption as a junior incumbrancer is plain. The junior incumbrancer has a *statutory right* to redeem his mortgage from the prior lien "at any time" after the claim secured by the prior lien becomes due, and "before his right of redemption *is foreclosed.*" Redemption from this prior lien "is made by performing, or offering to perform, the act for the performance of which it is a security, and paying or offering to pay, the damages, if any, to which the holder of the lien is entitled *for delay.*" C. C. 2034, 2036. American Bank. & Trust Co., v. Lynch, 10 S. D. 410, 12 id. 204; Kalscheuer v. Upton 43 N. W. 817; Malmberg v. Peterson, 108 N. W. 339.

The only things essential to a right of a junior lienholder to redeem his lien from the prior lien, are:

1. There must be a valid and subsisting junior lien, *capable at the time of enforcement.*

2. There must be a valid and subsisting prior lien, which is either due, or to the performance or payment of which the holder consents at the time.

3. The right to redeem under the junior lien must not have been foreclosed.

The right of a junior lien holder to redeem from a prior lien is not by virtue of any mere grace or favor of equity. It is as absolute, fixed and certain as is his right to foreclose and enforce his own lien. *It rests upon the statute.* It is not a mere matter of relief, allowable or disallowable in the discretion of the court. It is a *right of action,* bottomed upon his own *junior lien,* and guaranteed by law. All of the three essential elements above mentioned exist herein in favor of the plaintiff.

Again, when the statute uses the words "at any time" it means just what it says. It takes the case out of the operation of the statute of limitations entirely. Hall vs. Arnot (Cal.) 27 Pac. 200.

This is "an action upon a sealed instrument." Under that instrument three distinct *forms* of action might be maintained, three separate *remedies* enforced, either one of which may be prosecuted separately or all may be prosecuted in one suit. These forms or remedies are:

1. An action at law to recover upon a debt. No one would question that this would be an action "upon a sealed instrument" and would subsist for twenty years from the date when the right of action accrued. It would be based upon the mortgage, and not upon the notes. The mortgagors in the sealed instrument *covenanted to pay the debt.*

2. An action in equity to collect the debt by foreclosure of the sealed instrument, and sale of the premises under the *statutory right* thus to foreclose in equity; and it would subsist for 20 years from the date when the cause of action accrued. to-wit: The maturity of the debt, or default under the terms of the mortgage.

3. An action to enforce the *statutory right,* based upon the sealed instrument, to redeem from the prior lien. This would be as much "an action upon a sealed instrument" as either of the two former mentioned forms of action or remedies.. All these *remedies* or *forms* of action may be enforced in *one* action.

The present action has two of the three mentioned phases. Two remedies are sought to be applied, both in equity, one to foreclose

the mortgage, the other to redeem from the prior lien, upon neither of which the bar of the statute of limitations had fallen when the suit was commenced.

In either phase of the case, that of a foreclosure or that of redemption, the bar of the statute of limitations does not fall until the end of 20 years from the date when "the cause of action accrued." Both phases of the case are equitable remedies for the enforcement of a right, existing by virtue of a sealed instrument, and the action, whether considered in its separate phases, or in its entirety, is an action upon a sealed instrument. C. C. P. 39, 58, Sub. 2 66; C. C. 2034, 2035, 2036; Sprague v. Lovett, 20 S. D. 328, 106 N. W. 134; Green v. Frick, 25 S. D. 281, 126 N. W. 579; Cram v. Cottrell, 48 Neb. 646, 58 Am. St. 714; Bommer v. American Spiral Spring etc. Mfg. Co., 44 N. Y. Sup. Ct. 454; Houts v. Hoyne, 14 S. D. 176; Houts v. Olson, 14 S. D. 475; Miner v. Beekman, 50 N. Y. 337; Bruce v. Wanzer, 20 S. D. 277, 105 N. W. 282; Gower v. Winchester, 33 Ia. 303; Crawford v. Taylor, 42 Ia. 260; 17 Enc. P. & P. 964.

The question of possession, or when possession was claimed or acquired by Parks or any of her granteees, is not material to this action. If this were a suit by the mortgagor or the fee owner against the mortgagee in possession, the date of the beginning of adverse possession in the mortgagee might be material. But this rule does not apply to the case of a junior incumbrancer holding the right to redeem from a prior incumbrance, his right of redemption not having been foreclosed. Such junior incumbrancer is not entitled to possession, and is not bound to take notice of any possession asserted adverse to the fee owner. The right of a junior incumbrancer to redeem from a prior incumbrance rests upon his own lien and right to enforce the same, whether it be one that survives 6, 10 or 20 years, and is enforceable so long as his cause of action survives against the principal debtor. The junior incumbrancer's right of redemption from a prior lien is "reciprocal and commensurable" with his right to foreclose. Gower v. Winchester, 33 Ia. 303; 13 Am. & Eng. Enc. L. (2nd Ed.) 784. 11 Am. & Eng. Enc. L. (2nd Ed.) 248; 27 Cyc, 815 816, 1850-1851; C. C. Sec. 2034. But even if the ten years statute of limitations is appplicable, its bar had not fallen when this suit was commenced.

This statute would not begin to run at the time of the issuance

of the sheriff's certificate of sale on the Parks foreclosure. In no event could it begin to run until the sheriff's deed was issued, which was April 22nd, 1898. Until the Sheriff's deed no title passed to Ruth A. Parks, if any title ever did pass to her. She had nothing but a certificate of sale from March 31st 1893, to April 22, 1898. VanCamp v. Webber (S. D.) 130 N. W. 591; Farr v. Semmler, (S. D.), 123 N. W. 835.

Whether this ten year statute began to run upon the date of the issuance of the Sheriff's certificate of sale, the date of the issuance of the sheriff's deed, the date of the removal of Luanna F. Calkins and her family from the premises, or the date of the taking of possession by Ruth A. Parks, it had not fully run when this suit was commenced. An action to either foreclose a mortgage or to redeem from a prior mortgage, or both, is an action in personam. Whatever suspends the personal remedy, tolls the statute. Parks and each of her successive grantees down to Sullivan, (deed to whom is dated Apr. 11, 1904), were successively indispensable parties to a suit, either to foreclose or to redeem, or both, and each of these persons were absent from, and were non-residents of the State of South Dakota, during all the times involved herein. If Ruth A. Parks ever became the owner of the mortgage, and the redemption was to be made from the mortgagee or its assignee, then up to the time of the foreclosure decree and sale thereunder, as well as up to the time of the issuance of the sheriff's deed, and as well also up to the time of her conveyance to John G. Lund, she was a necessary party to the suit. Code of Civil Procedure Sec. 69. Burleigh v. Hecht, 22 S. D. 301, 117 N. W. 367. Colonial and U. S. Mortgage Co. v. Northwestern Thresher Co., (N. D.), 103 N. W. 916; id v. Flemington, (N. D.), id. 929. Paine v. Dodds (N. D.), id. 931 ;17 Enc. P. & P., 945, 959, 961, 962. Leads Lumber Co. v. Miller, (Ia.), 67 N. W. 383. Ard. v. Wilson, (Kan.), 56 Pac. 80. Banking Association v. Commercial Nat. Bank, 157 Ill. 524.

The mortgagors were indispensible parties to an action, either to redeem the junior mortgage from the lien of the prior mortgage, or to foreclose the junior mortgage. Edward Calkins having died in 1894, and then having at least four minor children who continued to reside upon the premises with their mother, Luana F. Calkins, as a homestead, until the fall of 1900, they were each indis-

pensible parties to a suit, either to foreclose the Froelich mortgage or to redeem that mortgage from the lien of the prior mortgage. 17 Enc. P. & P. 959, 960.

The evidence discloses that whatever title or interest Swafford acquired, he acquired from Sullivan. Assuming that Parks, instead of Blaisdell, became the owner of the mortgage, and that Swafford succeeded to the title and interest of Parks, through the various conveyances to Lund, Ferneding and Sullivan, then Swafford would be required to account for the rents with which each of these gran tees were charged, and down at least to the date of the trial or the entry of final decree. 27 Cyc. 1841, 1839, 1835; Bunce v. West, 17 N. W. 179; Miner v. Beekman, 50 N. Y. 337; Gaskell v. Viquesney, 122 Ind. 244, 17 Am. St. 364.

The matter of improvements on the premises constitute no element in the accounting in this case, because:

1. This is not a case of a redemption by the mortgagor, or the fee owner, or any one entitled to possession by reason of such redemption, but is a redemption by a junior lienholder from a prior lien.

2. The evidence clearly shows that the premises are of sufficient value to pay off both the first and second mortgage, without reference to the value of the improvements, or the enhanced value of the premises by reason of such improvements.

3. Swafford is in no better position to claim the credit for the value of these improvements as against a junior incumbrancer redeeming, than would the mortgagor be entitled to claim credit on his mortgage because he has made improvements on the premises.

4. Swafford knew all the time of the existence of the second mortgage, and knew long before any improvements were made that the plaintiff and his assignor were asserting their claim and rights under the second mortgage. He had actual and positive knowledge of it. Cram v. Cottrell, 48 Neb. 646, 58 Am. St. Rep. 714. The question of laches is not involved. It has no applicability to a case like the present.

The statute fixes the period of limitation. These periods apply and govern both in legal and equitable actions. McPherson v. Hayward, 81 Maine 329, 17 Atl. 164; Cassen v. Heustis, 201 Ill. 208, 66 N. E. 283; Allen v. Allen, (Cal.) 30 Pac. 213; Dickson v. Stewart, (Neb.) 98 N. W. 1085; Rogers v. Benton, (Minn.), 38 N. W. 765;

Crawford v. Taylor, 42 Iowa 260; DeMuth v. Old Town Bank, 85 Md. 315, 60 A. S. R. 322; Bradley v. Norris, (Minn.), 65 N. W. 357; Walker v. Warner, 179 Ill. 16, 70 A. S. R. 85; Houston v. Nat. Mut. etc. Ass'n., 80 Miss., 31, 31 South. 540, 92 A. S. R. 565; Moore v. Dick, (Mass), 72 N. E. 967; Gibbons v. Hoag, 95 Ill. 67.

And where the right to redeem is controlled by the statute of limitations, whether it be the 10. year or the 20 year statute, that right continues so long as the bar of the statute has not fallen. No lapse of time short of that prescribed by the statute of limitations can be held to bar the right of redemption.

At common law and in the absence of a statute, the period within which redemption might be had was 20 years, this rule being enforced in equity in analogy to the 20 years statute of limitations upon an action to recover possession of real estate. But so long as the right to foreclose subsists, the right to redeem, in the absence of an element of estoppel, subsists also. Cassen v. Heustis, supra; Allen v. Allen, supra.

The right of redemption and subrogation to the right secured by a prior lien, is one favored by courts of equity, and hence damages for delay, if any arise, are provided for (in the absence of a statute) by such courts, appropriate provision being made in the decree, but in this state the whole subject of the effect of delay or lapse of time is completely governed by the statute, provision for damages being made therefor in the statute. This undoubtedly was borrowed from the above mentioned equity rule. §2036 C. C. The increase in the value of the mortgaged premises, constitutes no defense, either to the foreclosure of the mortgage or the redemption of it from a prior lien. Holm v. Bidwell, (S. D.) 130 N. W. 837. The statute relative to the 10 year payment of taxes has no applicability to this suit. If Swafford was in the position of a prior mortgagee,, he would not be permitted to acquire a tax sale certificate, and thereafter a tax deed thereon, and set up this title as a defense to the junior mortgagee. He would be held merely to have paid the taxes. But as to the junior mortgagee who was not a party to such foreclosure proceeding, and whose right of redemption had not been cut off, the only pertinency of the payment of taxes for a period of ten years, or for any other period, would be as regards the matter of accounting. Froelich was not required to pay the taxes or to protect the premises from tax liens, except for the

purpose of protecting his own lien against the tax lien. Anson v. Anson, 20 Iowa 55, 89 A. D. 514; Bennett v. Moore, 18 S. D. 109, 99 N. W. 855; Holm v. Bidwell, (S. D.) 130 N. W. 837.

The question remains whether the redemption is to be of the prior mortgage debt, or whether the redemption is to be from the judgment of foreclosure or the certificate of sale thereon, or the sheriff's deed, and what rate of interest in either of these events shall govern. There is no evidence before the court to show the amount of the mortgage debt. In no event is the plaintiff chargeable either with the costs of the foreclosure, or the accruing costs of sale, because he was not a party to the suit. Cram v. Cotrell, 48 Neb. 646, 58 A. S. R. 714. Gaskell v. Viquesney, 122 Ind. 244 17 A. S. R. 364; 27 Cyc. 1829-30.

*Gardner, Fairbank & Churchill,* and *Boyce, Warren & Fairbank,* for Respondent.

If plaintiff's right to redeem has been barred, the mere fact of this foreclosure pending is immaterial, because such foreclosure would be a mere nullity, Froelich being forever cut off from redemption. The statute as regards redemption, equitable redemption, commenced to run from the date of the sale. The true rule as against a person as to whom the foreclosure was a nullity is, that the statute of redemption runs from the date possession is taken by the purchaser, which may be at the time of sale, at date of deed, or perhaps not until long after such deed.

The ten year statute of limitations applies to this action.

It is the defendant's theory of this case, that it is an action brought in equity for an accounting between the plaintiff and the defendant of the amount due under the first mortgage, and the rents and profits of the land received by the defendant, and the taxes paid by him; and also for permission to redeem from the sale of the first mortgage and connect therewith an action to foreclose the second mortgage.

If plaintiff had been made a party to the foreclosure of the first mortgage, he would have had to redeem within one year from the date of sale, but not being made a party, he could redeem at any time until his right was foreclosed or barred by the statute of limitations. In order to redeem however, he would have to come into a court of equity in a proper action for that purpose. This ac-

tion falls under section 66, Code of Civil Procedure, being the Ten-year Statute.

In this action plaintiff stands in exactly the same position as would the original mortgagor after a void foreclosure of the mortgage, and after the mortgagee had taken possession under such void foreclosure. Houts v. Hoyne, 14 S. D. 176. 84 N. W. 773. Houts v. Bartle, 85 N. W. 591; Hubbell v. Sibley, 50 N. Y. 468; Pollock Wright, 15 S. D. 134; Knownton v. Walker, 13 Wis. 264; Houts v. Olson, 85 N. W. 1015 (S. D.) Miner v. Beckman, 50 N. Y. 337; Nash v. Northwestern Land Co.., 108 N. W. 792 N. D.; Turpie v. Lowe, 62 N. E. 484 Ind.; Waldo v. Rice 14 Wis. 286.

This is not an action upon a sealed instrument; the only action upon a sealed instrument would be an action to foreclose the mortgage and there can be no question but what the second mortgagee could not foreclose his mortgage and take the property away from the possession of the first mortgage after the foreclosure of the first mortgage. His only right was a right to redeem and this right exists by reason of the statute and the principles of equity and is not based in any way upon the mortgage, whether sealed or unsealed. Houts v. Hoyne 14 S. D. 176; Pollock v. Wright 15 S. D. 134; Nash v. Northwestern Land Co. 108 N. W. 792 (N. D.)

The appellant claims that Section 2034 of Civil Code of S. D. gives him a right to redeem at "any time." He is mistaken as to the section governing his case. As a second mortgagee he comes under Section 2035, not 2034. The first section applies to the fee owner, the second section to an inferior lien holder.

The tolling of the statute on account of the absence of a necessary defendant from the state, only applied in actions in personam, where there is some necessity of making personal service upon the defendant. It has been held that the foreclosure of a mortgage is such an action because a personal judgment may be taken against the mortgagor for any balance due after the sale of the mortgaged premises. But in an action to redeem no such personal judgment can be taken, and the reason for the rule failing, the rule should also fail.

The presence of the fee owner is not necessary to the action to redeem.

The mortgagor, Edward Calkins, has no interest whatever in the land at the present time, his right having been cut out by de-

cree of foreclosure  He is not a necessary party to the action to redeem.  Colonial & U. S. Mortgage Co. v. Northwestern Threshing Co. 103, N. W. 915, N. D.; Voucopski v. Jacobson 26, L. R. A. N. S., 898, and note; George v. Butler, 67 Pac. 263; Pilipini v. Trobock, 66 Pac. 587.

The rights of the plaintiff have been barred by his laches.

The first mortgage was foreclosed in 1893.  The land was sold at that time for $992.00.  This was undoubtedly more than the land was worth at the time.  From 1893 down to 1900 the land was not worth more than this amount.  It was therefore useless for the second mortgagee to redeem from the sale, and he made no effort so to do.  Land values began to rise in Kingsbury County in 1900, and have risen very rapidly since that time so, that at the time of the trial the land was worth fifty dollars an acre.  During those fifteen years, the second mortgagee stood by without offering to redeem, or assail the foreclosure, and allowed the purchaser at the foreclosure sale and her grantees to take possession of the land, pay the taxes on it, and sell it and make substantial improvements upon it without ever claiming in any manner that he had any interest in the land whatever. He now stops in and seeks to take the benefit of the increase in the value of the land and for the improvement of which the defendant in this suit and his grantors have paid out.  Such actions are not favored in courts of equity.  Farr v. Semler, 123 N. W. 835, S. D.; Winterburg v. Vandecout, 122 N. W. 866, N. D.  Diamond v. Monheim, 63 N. W. 495; Wempal v. Pountz, 14 S. D., 335; Walker v. Warner, 70 Am. State Report, 85; Bausman v. Kelley, 36 N. W. 334.

Most of these improvements were made, however, after the ten year statute had run.

The claim of the plaintiff is barred by the statute providing for the quieting of title by the possession and payment of taxes for ten years.

Sections 54, 55 and 56 of the Code of Civil Procedure.

The defendant C. G. Swafford is clearly within the provisions of this act.  There was no relation of mortgagor and mortgagee between Ruth A. Parks and the plaintiff.  Ford v. Ford, (S. D.) 124 Northwestern, 1108; Schauble v. Schulz, 137, Federal 389; Stiles v. Granger (N. D.) 117 N. W. 777.

SMITH, J. In the view we take of this case, the facts essential to the determination of the appeal may be briefly stated. On February 1, 1888, Edward Calkins and his wife executed a mortgage upon a quarter section of land in Kingsbury County, to the Showalter Mortgage Company, securing an indebtedness of $575, which was recorded March 5, 1888, and was payable February, 1893. This mortgage was assigned to one Blaisdell, February 9, 1891, and the assignment recorded February 17, 1891. On May 15, 1891, the original mortgage was recorded in the register of deeds office, together with an assignment indorsed on the back of the mortgage with the name of Ruth A. Parks therein as assignee, which assignment was dated March 21, 1888. This purported assignment was not acknowledged so as to entitle it to record. Subsequently, on June 16, 1888, Calkins and his wife executed a mortgag on the same land to J. and G. W. Froelich, securing an indebtedness of $1,400, which was recorded July 28, 1888. This mortgage was a sealed instrument, and contained therein a direct promise to pay said indebtedness, and recited that it was subject to the Showalter mortgage. This action is to foreclose the latter mortgage, and to redeem from the Showalter mortgage. The trial court found $850 of the indebtedness secured by the Froelich mortgage, with interest thereon, remained due and unpaid at the commencement of this action, and that prior to the beginning of this action J. Froelich assigned his interest in said mortgage to G. W. Froelich, the plaintiff. In December, 1892, Ruth A. Parks, as assignee of the Showalter mortgage, commenced an action of foreclosure; the only defendants in such action being the mortgagors, Edward and Luana Calkins, upon whom personal service was made. On February 16, 1893, a decree of foreclosure was entered in this action. The property was sold under said decree, and a sheriff's certificate of sale issued to Ruth A. Parks, bearing date of March 31, 1893, which was recorded May 23, 1893. On April 22, 1898, a sheriff's deed on this certificate of sale was issued to Ruth A. Parks, and recorded in the register of deed's office the same day. The defendant Swafford claims ownership of the land through a warranty deed executed by Ruth A. Parks and her husband, and divers mesne conveyances by warranty deed vesting the title of Ruth A. Parks in himself. On October 15, 1908, plaintiff began this action to foreclose the Froelich mortgage, and to redeem from

the prior mortgage, claiming such right as junior mortgagee, and demanding an accounting for rents and profits during the intervening years, and that same be offset against the amount due on the first mortgage. All interested parties are made parties to this action, and all have defaulted except Swafford, who alone defends, and is respondent here. The defendant Swafford alleges that Ruth A. Parks was the owner of the Showalter mortgage at the time of her alleged foreclosure, alleges that plaintiff's action is barred by statutes of limitation and pleads that plaintiff is estopped by laches to foreclose his mortgage, or to redeem from the Showalter mortgage.

[1-3] We shall first consider appellant's contention that his right of redemption is not barred because defendant Ruth A. Parks did not become the lawful assignee and owner of the Showalter mortgage, and that her foreclosure proceedings are, for that reason, void and ineffective to bar plaintiff's right to redeem. This contention we think wholly immaterial, so far as the right of redemption is concerned, for the reason that the foreclosure proceedings whether conducted in the name of Blaisdell or in the name of Ruth A. Parks, could not in any manner affect plaintiff's right to redeem, so long as he was not made a party to the foreclosure proceedings. This right could only be barred by the 10-year statute of limitations, and not by the one-year period prescribed for redemption upon foreclosure. But a determination of the question whether Ruth A. Parks must be held to be the owner of the Showalter mortgage at the time of her foreclosure becomes necessary, as will be apparent later, for the reason that Swafford's rights and obligations as holder of the legal title of Calkins, through the foreclosure, become very material to a proper consideration of the rights of all the other parties to the action. We think appellant's contention that Ruth A. Parks was not the owner of the Showalter mortgage cannot prevail upon the record before us. He seeks to raise the question in two ways: (1) By an objection to the introduction of the assignment itself at the trial; and (2) by an assignment that the evidence is insufficient to sustain the finding of the trial court that Ruth A. Parks became owner of the Showalter mortgage by an assignment. The objection offered to the introduction of the assignment in evidence was not that there was no proof of the execution of the assignment by the Showalter Company, but

was to the effect that the assignment itself was inoperative because of the assignment to Blaisdell. In the absence of a proper objection as to proof of execution, the assignment was properly received in evidence for whatever it was worth. The assignment to Parks purported to have been executed long before the assignment to Blaisdell or its record in the register of deeds office. If it was so executed, the title to the Showalter mortgage was in fact vested in Parks before the execution of the assignment to Blaisdell, and any superior title in Blaisdell must rest wholly upon the recording statute. Conceding the right of this plaintiff to assert the claim of Blaisdell, under his assignment, which we do not decide, it would be necessary for plaintiff to prove the same facts which it would be incumbent upon Blaisdell to establish were Blaisdell himself asserting his right under the recording statute. The burden of proof rests upon the later assignee to bring himself within the protection of the recording statute by proof that he was in fact an assignee in good faith and for value, and the same burden must be held to rest upon appellant in this case.

It was never the purpose of our recording statutes to protect persons who take transfers or assignments with actual notice of prior transfers or assignments, or who take transfers or assignments without valuable consideration. The statutes protect only persons therein described and intended to be protected, and, when its protection is sought, the person seeking it must assert and prove every fact essential to bring him within the class described in the statute. He must assert and prove, not only that he placed his assignment of record first, but that he parted with value therefor, *and purchased in "good faith"*—that is that he had no actual notice of prior transfers, assignments, or equities. Each of these facts is as essential as the other. Proof that his assignment was first recorded, and that he paid value, is not enough. He must allege and show affirmatively that his purchase was made in "good faith," and, even though the written assignment be held to import a valuable *consideration,* it does not import and cannot be held evidence of the fact that the transaction was in "good faith," or without notice. That fact must be shown *aliunde* the instrument itself. The recording statute does not and is not intended to establish a rule of evidence, but only to confer a substantive right. The effect of the statute is to change the old equity rule that, of

two innocent purchasers, the transfer prior in point of *time* should prevail. Under the recording act, the rule is that, of two innocent purchasers, the one whose transfer is first *recorded* acquires the prior substantive right, but, as a condition to being given this priority of right, the subsequent assignee must assume the burden of showing that he paid a valuable consideration for the transfer, and that when he took the transfer, he had no knowledge that his grantor had previously parted with his interests to an earlier grantee. The theory of the statute is that the prior grantee loses his prior right in equity by reason of his negligence in failing to promptly record his transfer. We are aware there are decisions holding that a deed reciting a valuable consideration is prima facie evidence of good faith. Many of these cases merely follow a dictum in Wood v. Chapin, 13 N. Y. 509, 67 Am. Dec. 62. We do not consider that case decisive of the point under discussion. No issue of good faith was involved or discussed in that case. The court, however, said: "But a subsequent grantee, to entitle himself to the benefit of the statute, must not only buy *without notice*, and put his deed first on record, but he must also purchase for a valuable consideration." The proof of consideration was the issue in that case and not good faith. The sufficiency of the evidence to prove good faith was not challenged, and its sufficiency was assumed by the court in its discussion of the matter really involved—the consideration. An examiniatioin of the record discloses not one scintilla of evidence tending to show that Blaisdell was an assignee in good faith or without notice of the Parks assignment.

Appellant's contention that the assignment to Blaisdell must be held to defeat the rights of Ruth A. Parks under her assignment cannot be sstained, and the trial court was justified in holding that Ruth A. Parks became the owner of the Showalter mortgage. The written evidence of this assignment having been properly received was sufficient to sustain the finding of the trial court, and the assignment of insufficiency of evidence cannot be sustained.

[4-6] It may be further observed that Swafford and Blaisdell were made defendants in this action, to the end that their conflicting claims to the redemption fund might also be adjudicated. Each could and was bound to assert his right to such fund, and, unless asserted, the right would be forever barred by judg-

ment.  Blaisdell has made default, and his right as against Swaf-
ford must be held to be barred. The property was sold at fore-
closure sale on March 31, 1893.  The mortgagor, Edward Calk-
ins, died April 24, 1894.  The redemption right of both Calkins
and his wife, parties to the foreclosure action, was barred by the
year of redemption before his death, and his minor heirs, there-
fore, did not succeed to any right of redemption.  Ruth A. Parks
and her grantees down to Swafford, having parted with all their
interest in the property, cannot claim the redemption fund. Swaf-
ford alone is in a position to make such a claim.

[7-8] Appellant's contention reduced to its simplest form is
that because his mortgage is a sealed instrument, and as such is
only barred by the 20-year statute of limitations, his right to fore-
close his mortgage and to redeem, likewise, remains for 20 years.
Appellant claims that the right of the junior lien-holder to redeem
from a prior lien is not by virtue of mere grace, or favor, or
equity, but that it rests wholly upon the statute, and is not a mat-
ter of relief, which may be allowed or disallowed in the discre-
tion of the court, and that it is as absolutely fixed and certain as
his right to foreclose his mortgage.  He founds his right to re-
deem upon the language of the Code, which says in substance
that one who has a lien inferior to another, upon the same prop-
erty, has a right to redeem from the prior lien at any time after
the claim is due, and before his right of redemption is foreclosed.
Civ. Code, §§2034, 2035.  These sections of the Civil Code fix
the time when the right of redemption accrues.  The right of the
junior lienholder to redeem becomes complete and perfect the
very instant the senior lien becomes due and payable, and may be
enforced in an equity suit.  When there has been a foreclosure of
a senior mortgage by publication, or by action to which the jun-
ior mortgagee has been made a party, the junior mortgagee may
redeem by payment of the amount for which the property was
been bid in at the sale, even though that amount be less than the
amount of the senior mortgage.  This is made entirely clear by
the provisions of sections 375, 376, 646, of the Code of Civil Pro-
cedure relating to redemptions.  When a junior lienholder has
been made a party to a foreclosure, his right to redeem from the
mortgage sale is limited to one year by the statute itself.  On
the contrary, the junior mortgagee or lienholder not made a party

to action to foreclose the senior mortgage or lien is not permitted to redeem from the sale, but must redeem by paying the entire amount of the senior mortgage or lien, regardless of the amount for which the property was sold at the sale. In Martin v. Fridley, 23 Minn. 16, the court said: "It seems well established by the authorities that one who is not bound by a foreclosure cannot redeem from the sale, but that he must redeem, if he has a right of redemption, from the entire mortgage by paying the whole amount of it." In Collins v. Riggs, 14 Wall, 491, 20 L. Ed. 723, it was said: "The party offering to redeem proceeds upon the hypothesis that, as to him, the mortgage has never been foreclosed and is still in existence. Therefore he can only lift it by paying it." Douglas v. Bishop, 27 Iowa, 214; Knowles v. Rablin, 20 Iowa, 101; Spurgin v. Adamson, 62 Iowa, 661, 18 N. W. 293; Johnson v. Harmon, 19 Iowa, 56; Gage v. Brewster, 31 N. Y. 218; Vroom v. Ditmas, 4 Paige (N. Y.) 526; Benedict v. Gilman, 4 Paige (N. Y.) 58—are cases sustaining these views.

The right of redemption can never be deemed to have been "foreclosed" except where the party possessing the right to redeem has been made a party to foreclosure proceedings. It is only in this sense that the word "foreclosed" is used in section 2034 of the Civil Code. It is evident, therefore, that the right to redeem cannot be deemed lost or barred by the foreclosure proceeding itself, but is lost by the failure to redeem from the foreclosure sale within the one-year limitation prescribed by the statutes relating to redemption. When the year has expired without redemption, the right to redeem may be said to be "foreclosed;" but the exact fact is that the right of redemption is barred by the one year limitation. As is apparent from the decisions above cited, the junior lienholder not made a party to the foreclosure proceedings cannot redeem from the foreclosure sale, and therefore is not barred by the one-year limitation in the redemption statute. In California, prior to the enactment of section 2903 of their Civil Code, identical with 2034 of our Civil Code, and prior to the enactment of section 346 of the California Civil Code, which bars the right of redemption after five years' adverse possession as therein defined, it was held that the right of redemption was a pure equitable right, the creation of courts of chancery,

and that the chancery courts would by analogy apply, in a re-
demption action, the same period of limitation which would bar
an action to foreclose the junior lien. That court, however, in the
case of Hall v. Arnott, 80 Cal. 348, 22 Pac. 200, uses language
which might be construed as holding that the enactment of sec-
tion 2903 of their Civil Code (section 2034 of our Civil Code)
changed the former equity rule, and continued the right of re-
demption, regardless of any statute of limitations against the jun-
ior obligation. If this is what the California court meant, it
would seem that the senior incumbrancer could not plead any stat-
ute of limitations whatever, in bar of the right of the junior in-
cumbrancer to redeem, except the 6-month limitation in the Cali-
fornia redemption statute, and that, of course, only where the
junior lienholder had been made a party to the foreclosure
of the senior lien. Appellant, however, apparently does not con-
tend for so broad an interpretation of the statute as that which
seems suggested by the language used in the Hall Case. His
contention is that, because the junior mortgage is a sealed instru-
ment, and barred only by the 20-year statute of limitations, his
right of redemption can only be barred by the 20-year statute,
apparently attempting to apply the old equity rule. It is plain,
however, that Hall v. Arnott does not sustain this contention. At
the utmost, that decision is authority only for the proposition that,
under the section of our Civil Code referred to, the right of re-
demption can only be terminated by foreclosure proceedings to
which the junior lienholder is party, and the expiration of the one-
year period of redemption in the redemption statutes. Appellant's
contention, however, apparently rests wholly upon the view that, be-
cause the junior lien is not barred, the action of redemption is not
barred. His argument is that the right to foreclose and right to re-
deem rest upon the same instrument, to-wit., the junior mortgage, and
therefore the same statute of limitations is applicable to both. It is
very evident that the decision in Hall v. Arnott does not sustain
this contention, because the court in that case says, in speaking
of the running of the statute of limitations against the junior ob-
ligation: "This conclusion renders it unnecessary to consider
whether the indebtedness secured by the instrument in question
was *barred or not* at the commencement of this action"—plainly

implying that statutes of limitations were considered entirely immaterial as affecting the right of redemption:

The right of redemption rests upon the junior mortgage only to the extent, and in the sense, that the lien of the junior mortgage must be an *existing lien,* and that the amount necessary to redeem is fixed by the amount due on the prior mortgage, or by the amount of the sale where the junior lienholder' is made a party to foreclosure proceedings. In all other respects the right to redeem is entirely independent of the right to foreclose the mortgage. The right to foreclose the mortgage arises by reason of default in payment of the sum secured thereby, or in some other condition therein contained. The right to redeem rests upon the statute, or upon principles of equity where there is no statute. One is of no higher character than the other. Each right is clearly defined—the one by the prior mortgage; the other by the statute itself, or by the rules of equity. It is also held that, where the junior mortgagee is not made a party to the proceedings for foreclosure of the prior mortgage, and the right of redemption still remains, the junior mortgagee may maintain a suit to foreclose, and may sell the mortgaged premises to pay both' mortgage debts, without first redeeming or offering to redeem from the senior mortgage. Catterlin v. Armstrong, 101 Ind. 258; McKennan v. Neff, 43 Ind. 503; Coleman v. Witherspoon, 76 Ind. 285; De Lashmutt v. Sellwood, 10 Or. 326; Memphis R. Co. v. State, 37 Ark. 632; Anson v. Anson, 20 Iowa, 55, 89 Am. Dec., 514; Atwater v West, 28 N. J. Eq. 361; Chilver v. Weston, 27 N. J. Eq. 435; Turner v. Phelps, 46 Tex. 251; Murphy v. Farwell, 9 Wis. 102; McDonald v. Miller, 90 Tex. 309, 39 S. W. 89. These decisions broadly illustrate the distinction between the right of redemption as it exists in a junior mortgagee who has been made party in prior foreclosure proceedings and in one not made a party to such proceedings.

There are many cases which hold that, when the junior lienholder has not been made a party to the foreclosure action, the old equity right of redemption remains entirely independent of the statute which prescribes a shorter period of redemption after foreclosure. This line of decisions may perhaps furnish ground for appellant's contention that the same limitation applies to both the foreclosure and the redemption action. The case of Hall v. Ar-

nott, 80 Cal. 348, 22 Pac. 200, relied upon by appellant, however, goes much farther, and holds that section 2903 of the California Civil Code abolishes the old equity rule, which by analogy applied the period of limitation for foreclosure of the junior lien to the redemption action, and in fact that case seems to hold that foreclosure by action to which the junior lienholder is made party is the only mode in which the right of redemption can be terminated or barred, except, perhaps, by adverse possession under section 346 of the California Code of Civil Procedure.

Section 343, California Code of Civil Procedure, provides that: "An action for relief not hereinbefore provided for must be commenced within four years after the cause of action shall have accrued." This section is identical with section 66 of our Code of Civil Procedure, except that the limitation in our Code is ten instead of four years. In Lux v. Haggan, 69 Cal. 269, 4 Pac. 919, 10 Pac. 674, the court held that section 343, Code Civ. Proc. Cal., above quoted applied to suits in equity as well as at law, and this holding was affirmed by that court in Dore v. Thornburg, 90 Cal. 64, 27 Pac. 30, 25 Am. St. Rep. 100. Why this period of limitation was not applied in Hall v. Arnott, supra, we are unable to understand, unless it be that section 346 of the California Code of Civil Procedure was construed as a special statute of limitations in redemption actions, and removed the redemption action from the operation of the 4-year limitation statute. In this state, however, we have no statute corresponding to section 346 of the California Code of Civil Procedure, and it would seem plain, therefore, under the California decisions which hold the 4-year statute of limitation applicable to equity actions, that the 10-year period of limitation should apply in this state to all actions, legal as well as equitable, where no other period of limitation is prescribed, and that the exception implied by the California court in Hall v. Arnott as to redemption actions does not exist in this state. It would seem perfectly plain, also, that, where the Legislature has enacted a 10-year statute of limitations applicable to redemption actions, the statute must be deemed to have abolished the old equity rule which by analogy applied the same limitation to the redemption action that was applicable in the action for foreclosure of the junior lien. We are constrained, therefore, to hold that sections 2034, 2035, of our Civil Code, so far as the same

relate to the period of redemption, are applicable only in cases. where the junior lienholder is made party to foreclosure of the senior lien, and that, where the junior lienholder is not made party to such proceedings, the right of redemption remains until barred by the 10-year statute of limitations. This .court so held in Houts v. Hoyne, 14 S. D. 176, 84 N. W. 773; Houts v. Bartle, 14 S. D. 322, 85 N. W. 591; Walters v. Bernard, 14 S. D. 221, 85 N. W. 1135; Houts v. Olson, 14 S. D. 475, 85 N. W. 1015; Am. Banking & Trust Co. v. Lynch, 10 S. D. 410, 73 N. W. 908; Id., 12 S. D. 204, 80 N. W. 1134—which decisions were followed in Nash v. N. W. Land Co., 15 N. D. 566, 108 N. W. 792:

Appellant further contends, however, that, even if the 10-year statute of limitation is applicable to the redemption relief asked in this action, its bar had not fallen when this suit was commenced.

[9] His first contention appears to be that the cause of action accrued either at the date of the taking possession of the premises by Ruth A. Parks, under her foreclosure, or at the date of the sheriff's certificate of sale, or the date of the issuance of the sheriff's deed, and that the action was begun within 10 years from either date. In this contention, appellant is clearly wrong. The right to redeem and to maintain an action for redemption accrued at the date of the maturity of the senior mortgage, and it is clear that more than ten years intervened between that date and the commencement of this action.

Appellant's second contention is that the defendant Ruth A. Parks and her successors in interest, excepting the defendant Swafford, were non-residents of the state during some portion of the 10-year period of limitation, and that the statute therefore was tolled as to this plaintiff's right of action. This contention is founded upon the assumption that an action to foreclose a mortgage or to redeem from a prior mortgage, or both, is an action in personam.

The trial court found that on the fifteenth day of April, 1904, the defendant C. G. Swafford, through a chain of conveyances, became the owner of all the right, title, interest, and estate of Ruth A. Parks vested in her by her foreclosure proceedings. This is not controverted by appellant. Parks, the grantee under the foreclosure proceedings, and every subsequent grantee of the in-

terest acquired by her by foreclose sale, down to and including the defendant Swafford, are made parties defendant in the present action. Every one of said defendants claiming any right to redemption through the senior mortgage or its foreclosure, or to the redemption fund, had the right, and in law was bound to assert his right, to the redemption fund, should the plaintiff be found entitled to redeem. But all of the defendants have made default, and have failed to assert any right whatever, except the defendant Swafford, who claims himself to be the owner of every right acquired through the foreclosure proceedings. It follows, therefore, that every adverse right or claim of each and all of the defaulting defendants, either as against the plaintiff, Froelich, or as against their co-defendant Swafford, is cut off and barred by such default, and the only conflicting rights remaining to be adjudicated in this action are those between the plaintiff and defendant Swafford.

We therefore have only to further consider the rights of Swafford as affected by the 10-year statute of limitations and estoppel by laches.

[10] It is appellant's contention that the 10-year statute of limitations cannot bar the rights of the heirs of Edward Calkins, deceased, for the reasons first, that they were minors at the time of his death, and, second, that they became nonresidents of the state, and their absence tolled the statute. As we have seen, neither the minority of these heirs nor their absence from the state is material in this action, for the reason that they never became vested with the right of redemption, and are not necessary defendants in the action. The right of the wife to redeem was lost before her removal from the state. Only those possessing a present right or claim to the redemption fund are necessary parties to an action to redeem.

[11-12] The record shows that on May 13, 1901, George Ferneding became the owner of all the right and title acquired by Ruth A. Parks through the sheriff's deed on foreclosure; that Ferneding sold the land to one Sullivan on the 5th day of April, 1904, and Sullivan sold the same land to defendant Swafford on the 15th of April, 1904. The defendant Swafford has been for many years a resident of this state. If he had acquired his title under the Sullivan deed, more than ten years prior to the be-

ginning of this action, on October 10, 1908, he clearly would have been entitled to plead the 10-year statute of limitations, in bar of the action. It is appellant's contention, however, that Parks, Sullivan, and Ferneding, being vested with right to the redemption fund during such time as they held the Calkins title, were necessary parties to a redemption action, and that the right of Swafford to plead the 10-year statute of limitations was tolled by their absence from the state.

Appellant requested the trial court to find as facts that Ferneding and Parks, during the time they held title, were non-residents of the state, and the refusal of the trial court is assigned as error. Such findings, we think, were vital to appellant's case, and the evidence was sufficient to sustain the findings asked for.

Assuming, therefore, that Ferneding and Parks were nonresidents of the state and necessary parties to an action of redemption within the 10-year period, we are called upon to determine whether their absence from the state tolled the 10-year statute of limitations as against Swafford, their successor in interest.

Considerable conflict is apparent in the decisions of the courts of different states as to the application of the statute of limitations in redemption actions. A majority of the decisions holding that the absence of a necessary party from the state tolls the statute of limitations appear to rest upon the doctrine that a redemption action is in personam, and not in rem. Other decisions hold that the right of redemption is analogous to a mortgage lien; that an action thereon can be maintained at any time within the period of limitation, regardless of the residence of necessary parties defendant, and, because such action can be maintained, their absence does not toll the statute. A review of conflicting and inconsistent decisions, we think, would serve no useful purpose, and would unduly extend the discussion of this appeal.

Section 69 of the Code of Civil Procedure of this state, one of the sections of the statutes governing the time of commencing actions, provides as follows: "If, when the cause of action shall accrue, against any person, he shall be out of the state, such action may be commenced within the terms herein respectively limited, after the return of such person into the state."

It is generally held that a statute such as this is applicable to nonresidents of the state. As we have observed under the

statutes of this state, the right of a junior lienholder to redeem from a prior lien *accrues* upon the maturity of the debt secured by the prior lien. The right of the junior lienholder, under the statute, to maintain an action to redeem exists and need be asserted only as against the holder of the senior lien. The redemption action in no manner affects the rights or the estate of the mortgagor, or owner of the original title, and neither is a necessary party to such action. When the senior lienholder sells and assigns all his right and interest in the lien, his assignee becomes a necessary party to an action to redeem, and the plaintiff's right of action as against such assignee accrues at the date of his assignment.

It follows that Froelich's right of action against Ferneding accrued on May 13, 1901, against Sullivan on the 5th day of April, 1904, and against Swafford on the 15th day of April, 1904, the dates of their respective deeds. When plaintiff's right of action accrued against Ferneding on May 13, 1901, Ferneding was a non-resident of the state.

We think it clear that the running of the statute was suspended as against Ferneding and Parks by reason of nonresidence. It may be observed that the provision tolling the statute refers only to the *accruing of the cause of action,* and does not purport to make any distinction as to the different forms or remedy which may be pursued in an action. The statute does nothing further than to declare that the right to pursue *any remedy* appropriate to the particular cause of action shall not be barred so long as the *person* against whom the right of action exists shall remain a non-resident of the state. We think, therefore, there can be no warrant for saying that the right of action is suspended as to *one* class of remedies, but not as to another, or that the running of the statute is suspended as to actions *in personam,* but not as to actions quasi in rem, as a few courts seem to have held. There are no parties to actions strictly *in rem,* and therefore the statute can have no application in that class of actions.

If this view is correct, the running of the 10-year period of limitations in favor of Swafford was tolled by the nonresidence of Ferneding and Parks during a considerable part of that period, and plaintiff's right to redeem is not barred by the statute.

[13] Respondent further contends that, under the tax statute, appellant's right of redemption is barred by the possession of Swafford and his grantors, and their payment of taxes for more than 10 years prior to the commencement of the action. We think such a contention is wholly without merit. Ruth A. Parks through the foreclosure, became vested with the legal title to the land exactly as it existed in Calkins, the mortgagor, but subject to the rights created by Froelich's mortgage. As owners of the legal title, Parks and her grantees were entitled to possession of the land, and were required to pay the taxes assessed thereon, precisely as Calkins, the mortgagor, would have been required to pay them, had the legal title remained in him. It follows that possession and payment of taxes by Parks and her grantees could no more affect the Froelich lien than possession and payment of taxes by Calkins, the mortgagor, would have affected it. Possession and payment of taxes by Parks and her grantee, therefore, could not create a title which would bar the rights of Froelich under his mortgage lien.

The trial court held that Froelich was estopped by laches from foreclosing his mortgage, as well as from asserting the right of redemption. The court erred in so holding.

[14] Froelich could lose no right under the mortgage lien, by mere delay in enforcing it, so long as his lien was not barred by the statute of limitations, and, as a sealed instrument, the mortgage could be barred only by the lapse of 20 years. Chapter 293, Laws 1909, has no application in this case.

[15-17] Not a single act on the part of Froelich is shown by the record which could have induced Swafford, or any of his predecessors in title, to believe or act on the assumption that Froelich had abandoned or waived his rights under the mortgage. On the contrary, the record affirmatively and conclusively shows that Froelich at all times claimed and insisted on his rights under the mortgage, and that Swafford had actual knowledge thereof. On March 25, 1903, Swafford wrote to an attorney representing the Froelichs in the matter of this mortgage, saying: "Some two years since you wrote representing some claim that the Froelichs made in re an old second mortgage in a case wherein J. G. Lund v. the Froelichs and others to perfect title to [this land]. Can you please tell me if you still represent these Froelichs, and if so.

if they still regard it, their second mortgage, as any claim?" In reply to this letter Froelich's attorneys wrote that they were proceeding to foreclose the Froelich mortgage, and suggested that Swafford enter an appearance for them, and save the expense of service. In reply to this letter, Swafford wrote that it appeared to be to the interest of his clients to let this suit go on. On March 11, 1904, Swafford again wrote to Froelich's attorney, among other things, as follows: "It now develops in a decree had in another case that one Ferneding, in whose name this land now stands, will have to pay off this mortgage." In February, 1904, Swafford again wrote to Froelich's attorney saying that a client of his who was buying the land objected to the title on account of the Froelich mortgage, and that the circuit court had decreed that the owner must clear this cloud on the title, and asks, "What is the least that would procure a release?" On February 27, 1904, Froelich's attorney replied that there was then due on the mortgage $2,171.14; that he would be willing to advise his client to make some reasonable concessions, but would also advise them to obtain the opinion of the Supreme Court on the question involved before making the settlement for any nominal consideration. On March 7, 1904, Swafford wrote Froelich's attorney requesting him to name the least price Froelich would accept for a release of the mortgage, to which the attorney replied that he had no authority to submit an offer, but suggested that Swafford make an offer to be submitted to Froelich. On March 3, 1904, Swafford replied that he was not then in a position to make an offer. On March 18th Froelich's attorney wrote Swafford that he had received an offer of $200 for a release of the Froelich mortgage, but considered its acceptance absolutely out of the question. On April 11, 1904, Swafford wrote Froelich's attorney that Ferneding had sold the land to T. J. Sullivan by warranty deed, and the record shows that Sullivan sold the land to Swafford on the 15th of April, only 4 days later. Sullivan and Swafford were business partners. From the time Swafford acquired title, all communication between himself and Froelich ceased. Not a single act or word on the part of Froelich is shown in the record which by any possibility could have induced Swafford to believe that Froelich had ceased or did not intend to insist upon his rights under his mortgage lien against the land. From the very beginning down to

the commencement of this action, Froelich invariably asserted his rights under the mortgage whenever the same were questioned by any person. Therefore, when Swafford took his deed and assumed possession of the land in April, 1904, he did so with full knowledge of Froelich's rights, and also with full knowledge that Froelich, at all times, had refused to waive, and was affirmatively asserting his rights under the mortgage.

With full knowledge of these facts, Swafford placed all his improvements upon the land at his own peril, so far as the same might be affected by the Froelich lien. Cram v. Cotrell, 48 Neb. 648. The great increase in market value of these lands during the existence of Froelich's lien is wholly immaterial. It would be absurd to hold that the natural increase in value of the security could in any manner jeopardize or affect the validity of the mortgage lien. Swafford had succeeded to the legal title of Calkins, and was in possession under it. So far as Froelich's rights are concerned, the case stands exactly as though Calkins, during all this time, had retained the legal title, and had placed the improvements upon the land himself. Under the evidence in the record, we can see no possible ground for holding that Froelich should be estopped by laches or conduct from asserting his rights under his mortgage. We are impelled, therefore, to the conclusion that appellant has lost neither his right of foreclosure or redemption.

[18] Where foreclosure of a junior mortgage and redemption from a senior lien are joined in a single suit, the legal effect of the action is a request that the amount necessary to redeem be added to the amount due upon the junior incumbrance, and that the junior mortgagee be decreed and given the right to sell the land at foreclosure sale in satisfaction of the entire amount of both liens.

[19] It would follow in this case that foreclosure of the Froelich mortgage, with redemption as to the amount due under the Showalter mortgage, will not defeat the right of Swafford to redeem from a sale under the Froelich mortgage.

[20] Appellant's right to an accounting for rents and profits must be denied in view of the conclusions reached on this appeal. Swafford succeeded to the rights and title of the mortgagors, and

can no more be required to account than could the mortgagor, Calkins.

We have considered the other assignments of error, but do not think it necessary, in view of the conclusions already announced, to further examine them, as they would in no manner affect the rights of either party as settled and determined by the views herein expressed.

The findings of fact, conclusions of law, and decree entered by the trial court must therefore be reversed, and a new trial granted.